312 P.2d 91

Jake ARMIJO, Benjamin Benavidez, David J. Armijo, Trinidad Lovato, Ufelia Games, Marcelino Saavedra, Manuel Garcia, Tranquilino Barela, Roman Salas, Samuel Garcia, Carlos Games, Rumaldo Garcia, Filemon Chavez, B. W. Sloan, Arturo Gonzales, Max Griego, in their own behalf and in behalf of others similarly situated, Petitioners-Appellants,

v.

TOWN OF ATRISCO, a corporation, Respondent-Appellees.

No. 6145.

Supreme Court of New Mexico.

May 29, 1957.

Hannett, Hannett & Cornish, Albuquerque, for appellants.

John N. Brunacini, Lewis R. Sutin, Albuquerque, for appellees.

SADLER, Justice.

This is not the first time there has been before this Court a case involving the affairs of the Town of Atrisco Grant. A little more than five years ago we handed down an opinion in the case of Armijo v. Town of Atrisco (Grant), 56 N.M. 2, 239 P.2d 535, on review from the district court of Bernalillo County, in which the history of the Grant was chronicled at great length in findings made by the trial court, which we approved. We also approved an opinion filed by the trial judge in the cause by adopting it in language, as follows, to wit:

"The trial court filed an opinion which contains a careful statement of the controlling facts. It has our approval and so thoroughly covers the case there is but little we can add to it. It reads as follows: * * *."

We refer the reader to pages 4 to 9 of the report of that case in 56 N.M., pages 535 to 539 of 239 P.2d, for a readable and illuminating history of the Grant up to the time the trial judge filed his opinion in the case. The events which became the basis of complaint by appellants, called petitioners below, transpired subsequent to the mandate on the former appeal, reported as indicated in the citation, supra.

It was on April 22, 1954, that Jake Armijo and others, in their own behalf and in behalf of others similarly situated, by their attorneys, filed a petition in the same cause out of which the judgment affirmed on the former appeal arose, numbered 27,-432 on the civil docket of the district court of Bernalillo County, asking that certain orders theretofore entered in said cause for the authorized distribution of 10,000 acres of the common lands of the Grant to so-called heirs of the Grant, be vacated and held for naught. The petition alleged that petitioners were residents of the Town of Atrisco Grant, residing within its exterior boundaries and were either descendants of the original incorporators and resident property owners and taxpayers living within the Grant for a period of five years last past; or, were resident property owners and taxpayers living within the Grant who had been such residents and taxpayers for more than five years last past.

The defendants to said proceeding were said to be the corporation and its Board of Trustees. The petition went on to allege that the corporation held title to some 45,-000 acres of land to be administered under the provisions of New Mexico law governing community land grants; that in the above entitled cause the district court of the second judicial district had retained supervisory jurisdiction over the corporation and its Board of Trustees by judgment or order entered September 17, 1941, and that subsequent thereto the court had entered a further order continuing the supervisory jurisdiction previously retained by it.

The Town of Atrisco, a corporation, was joined as a party defendant to said reservation of jurisdiction by the district court; that since the corporation and its Board of Trustees were under the jurisdiction of the district court as a result of an order entered September 17, 1941, and other orders, the Board of Trustees petitioned the court to distribute, by lottery, some 10,000 acres of land to so-called heirs of the Grant for the costs of abstracts, quieting title and surveying the land preliminary to such distribution. The petition further alleged that the court had approved the proposed distribution by orders entered in the cause.

It was next alleged in the petition that the persons entitled to the benefits of the Grant were those who came within the definition of "owners and proprietors" under the Community Land Grant law; that the Grant was a community land grant and the common lands of the Grant were for the benefit of all the owners and proprietors of the Grant; that a protest had been filed with the Board of Trustees concerning their action claiming the proposed distribution was illegal and invalid and deprived the petitioners of their rights.

The petition went on to recite that subsequent to entering the initial order for distribution of the 10,000 acres on July 4, 1953, the Board of Trustees of the Grant changed the manner, procedure and land to be conveyed as set forth in such order, and that a protest to said action was filed as required by law; that any attempt to distribute lands of the Grant as set forth in the last mentioned order would amount to a preference as between persons entitled to the benefits of the Grant, was without statutory authority, illegal and invalid and deprived the petitioners of their rights as persons entitled to share in the benefits appertaining to the Grant.

A response or answer was filed to the petition so filed by appellants, generally denying the allegations thereof except that it admitted the ownership by the Grant of a fee-simple title to about 45,000 acres of the common lands, as alleged in the petition. The trial court treated the issue before it as one of law.

On September 17, 1941, as already shown, an order had been entered, placing the Board of Trustees of said Grant under the supervisory jurisdiction of the district court of Bernalillo County. By that order the Town of Atrisco, a corporation, was also joined as a party defendant. It should be added that this order further provided that no sale, mortgage or other alienation of the common lands of the Town of Atrisco should be made unless approved by the court.

It seems that at a time prior to some of the events recited above, indeed, at a date prior to February 7, 1952, the then Board of Trustees of the Grant was about to petition the court in this cause to sell about 4,500 acres of the common lands to one Esteban Herrera for $4.50 per acre, or $20,000. Learning of the proposed sale, certain members of the Board as well as other owners and proprietors within the Grant petitioned the court to stop the sale and to issue an order to show cause why it should not be abandoned.

A response to the order to show cause was filed by the Board denying generally the allegations of the foregoing petition. The court, preliminary to a ruling on the order, appointed three appraisers of the land, the sale of which was sought.

The matter came on for hearing later before then district judge, R. F. Deacon Arledge, at a sort of pre-trial conference, following which in an order entitled "Memorandum for Pre-Trial Conference," the court stated that in the opinion of the appraisers, the land proposed to be sold for $20,000 had a value of $236,500. Accordingly, the court denied the application for the sale to Esteban Herrera and, later entered a formal order disapproving and permanently enjoining the sale.

It was subsequent to this action by the court and on March 19, 1953, there came

444

on for hearing before the district court of Bernalillo County, the Honorable R. F. Deacon Arledge, district judge, presiding, the petition of the Town of Atrisco, a corporation, filed February 17, 1953, and supplemental petition of the Town of Atrisco filed March 17, 1953. The appearances noted in the transcript of said hearing are, as follows:

"Appearances:

"John N. Brunacini,
Attorney for the
Town of Atrisco, A corporation;
"Dale B. Walker,
Attorney for some of the
Atrisco Grant Heirs;
"Gordon W. Coker,
Attorney for some of the
Atrisco Grant Heirs."

The proceedings at the beginning of the hearing and through a certain part thereof are set out herein, as follows:

"The Court: Mr. Brunacini, tell us what your Petition is all about.

"Mr. Brunacini: If the Court please, this is the time set for the hearing on this Petition filed some time ago by the Board of Trustees of the Town of Atrisco. The Petition is based on the Resolution of the Board of Trustees to appeal to the Court to approve its distribution of about 10,-000 acres of the common lands of the Atrisco Grant. We are prepared to show your Honor that there were pre-vious allotments made by previous Boards of Trustees that have not been equitable; that there are many of the heirs who own part of the land on the Atrisco Grant, and there are many who do not. We will show your Honor that there have been complaints about this inequity. These people feel they should have some relief, in view of the fact we have made a thorough search of the Records of Bernalillo County and we will show that previous allotments were not equitable. Our people here are claiming some relief, if possible, from that situation and we are ready to produce evidence as to all the deeds made by the Town of Atrisco to date.

"We are using the case of 'Philip Hubbell vs. The Town of Atrisco' (counsel later corrected this caption to read 'James M. Hubbell vs. The Town of Atrisco,' Cause No. 22606) as a basis in determining who are heirs and who are not. The number of that case, I think, if my recollection is correct is Cause No. 22606.

"The Court: That file has been stolen many times and lost many times. We must caution the Clerk to take good care of it. We should have that file photostated, the first thing.

"Mr. Brunacini: I shall do that. We are using it as a basis in the determination on that case as to who are

heirs and who are not. In that case there was a confirmation of the committee's report that there were 233, or some such number, then determined to be the heirs.

"The Court: How many?

"Mr. Brunacini: Two hundred thirty-three.

"The Court: Do you mean to tell me the Philip Hubbell case proved there were only two hundred thirty-three heirs?

"Mr. Brunacini: Original heirs.

"The Court: All right.

"Mr. Brunacini: Of course, there were many descendants and perhaps some we will learn of now. It will run into the thousands. The report also accounts for the dead heirs and this determines who they are and the actual part that each number is entitled to in the place and stead of the deceased heir.

"At this point, may I correct myself: James M. Hubbell is the plaintiff in this Case No. 22606.

"I have been the attorney for the Atrisco Grant for about a year and a half, your Honor. This subject has come up almost every time we have had a meeting and we now ask the Court to consider our application very seriously. One of the steps we have taken, I have caused to be prepared a so-called 'application' which would be signed by the person who believes he is eligible to share in any possible distribution of the land, and the Secretary, with a great deal of preparation and help, has accepted the executed application of 2,134 persons. This, again, required a great deal of preparation and time to process them and they came out with a total of 1,800 applications approved.

"The Court: And 333 were disapproved?

"Mr. Brunacini: Yes, they must have found in their processing evidence that those 333 did not qualify, due to lack of heirship or on some other qualification.

"The Court: What is it these people are trying to do, purchase five-acre tracts?

"Mr. Brunacini: The plan here, your honor, is that there are some people who never got any lands at all. Some people received five-acre tracts and some people received more than five acres. To those who received no land whatsoever, our proposal is that they be allowed ten acres; to those heirs who only received five acres, we propose they be permitted to have five more acres. We have arrived at a minimum figure on this in our Petition which states that we are asking the Court to approve the dis-

tribution of about 10,000 acres. This is only approximate and if the Court does approve it, it will have to be worked out. I am sure it will be more than 10,000 acres.

"The Court: How much do you plan to sell those five acre and ten acre tracts for?"

Explanatory of the plan to be used for distribution of the lands, the attorney for the Grant, Mr. Brunacini, stated into the record the following, to wit:

"Mr. Brunacini: I did make reference in my Supplemental Petition to the form or system we would use, that the names of all persons eligible to receive land could be placed in alphabetical order and each tract allotted given a number and then there would be a drawing system right in this Court Room, or some suitable place. Each number could be drawn either by the allottee himself or herself or drawn by someone else, at the discretion of the Court, and each number of the acreage drawn could be assigned to each person alphabetically listed. In that fashion, there would be no complaints as to what is given to whom, because there will naturally be choice tracts among those distributed, but we must be good sports about it and make the best of it. It could be worked out."

After a short colloquy between the judge and Mr. Brunacini, Judge Arledge stated into the record a summary of his understanding of what the plan proposed was in the following language:

"Now, as I understand you, Mr. Brunacini, the plan you propose here is pursuant to resolution of the Board of Trustees; that they wish to take applications from the heirs of the Grant, whom they shall determine based primarily on the Hubbell suit; that they will sell to each heir who applies ten acres of land, at $10 per acre, except those heirs who previously received five-acre allotments and to them they will sell only five acres; that before the sale is consummated, the Board wishes to quiet title to approximately 10,000 acres and give each person title according to that survey, after application is approved. Approved applicants will be matched each to the surveyed tract on the basis of a jury wheel or similar to a rotary system, is that your plan in substance?

"Mr. Brunacini: Generally, yes sir. Anything that would be equitable and acceptable to any fair-minded person.

"The Court: Now the purpose behind this, as I understand it, is primarily to let the heirs of this Grant participate in some of the benefits of the Grant that have accumulated through the years.

"Mr. Brunacini: We take the position that this is their land and unless it is cultivated, improved, and enjoyed, it is of no good—no more than a mountain or pile of rocks."

Apparently, before the hearing ended, the court became somewhat concerned about the notice of the hearing then being held, for we find this colloquy between the court and counsel, to-wit:

"The Court: Thank you, Mr. Coker. To make our record complete here, Mr. Brunacini, what notice did you give of this hearing on your Petition?

"Mr. Brunacini: As instructed by your Honor, I published notice in the Bernalillo County newspapers and Proof of Publication is on file. It wasn't placed in the proper order in the Court file. And in addition to that, I notified about eight or ten attorneys, in accordance with the suggestion of your Honor, and filed Proof of Mailing notices to those attorneys.

"The Court: You sent notices to all of the attorneys concerned with this case?

"Mr. Brunacini: Yes, I think we sent notices to eight or nine of them. The original is in the file.

"The Court: (referring to the Court file) You sent notices to Gilberto Espinosa, Hannett & Hannett, Lorenzo A. Chavez, B. C. Hernandez, Jr., Martin A. Threet, John E. Hall, and the two attorneys present here today, is that correct?

"Mr. Brunacini: Notice was sent pursuant to your orders at the time of filing the original Petition.

"The Court: (addressing Arturo Herrera, Secretary of the Board of Trustees of the Atrisco Grant) Mr. Herrera, was it generally known on the Grant that this hearing was to be held today? Did the people know about this hearing today?

"Mr. Herrera: Yes.

\*    \*    \*    \*    \*    \*

"The Court: This hearing here today concerns the interests of the heirs of the Town of Atrisco Land Grant. Let me see the hands of all those here who believe they are heirs of the Atrisco Land Grant? Thank you.

"Now, the lawyers have explained this matter to the Court. We have a lawyer for the Trustees, Mr. Brunacini; we have Mr. Coker, representing some of the heirs; and we have Mr. Walker, representing some of the heirs.

"The Board of Trustees have presented a petition to this Court, which all of you heard explained here today—those of you who understand English. Some of you who do not speak English, I am sure your friends and lawyers will explain it to you.

"The plan, in general, is this: The Trustees of the Atrisco Grant want to sell ten acres of land to each heir; except those heirs who have already received five acres, to those heirs, the Grant will sell only five acres; and to those heirs who have already received ten acres, they will not receive any additional land. Now, the Grant wants to sell this land to the heirs for $10 an acre—that is, a ten-acre tract would cost an heir $100. The trustees have worked out a plan, in principle at least, with the aid of Mr. Coker and Mr. Walker. If one of the heirs is entitled to ten acres and he is too poor to pay the $100, then the Trustees of the Grant will let him borrow the $100 to buy his ten acres. All of the details of the plan have not been worked out, but the plan in general is to distribute 10,000 acres, more or less, of the lands of the Atrisco Grant among about 2,000 heirs of the Grant who have applied or will apply for the land. The details of this plan, to make it fair for everyone and to correct any mistakes as to who the heirs actually are, have not been all worked out. If the Court works out these plans, on the suggestion of Mr. Coker, in his words, in accordance with the principle of law, the guiding light of the Court will be to avoid fraud, to avoid graft, and to avoid excessive fees.

"Now, it has been explained to the Court that this fee of $10 an acre—this sale price of $10 an acre—is necessary. They will have to charge this so that the land can be surveyed and the title quieted by a proceeding in the Court, so that when ten acres is sold to an heir, he will know what land he is receiving and he will get a good title to it. He will not have to go to his own lawyer and spend $300 to $400 of his own money to have this done.

"I would like to see the hands of the heirs who favor this plan? Thank you.

"Now, I would like to see the hands of the heirs who do not like the plan.

"The Court: Is there anyone who does not like this plan who is not represented by Mr. Coker? (One woman held up her hand)

"Mr. Coker: Your Honor, I don't believe these people understand.

"The Court: I understand, Mr. Coker: How many people are in Court today? Let the record show about 140 persons in the Court Room. 130 said they were heirs of the Grant. About 100 said they were in favor of this plan; about 30 said they are opposed to it for one reason or another. Of the 30 who said they were opposed to it, all are represented by Mr. Coker except one.

"Now, this is a big thing for the Town of Atrisco Land Grant. This is a big thing for the heirs of the Grant. I am very happy that all of the lawyers here today are in agreement in principle. We probably have many details to work out; at this time, I feel that I am in agreement in principle with these lawyers. I want to thank those lawyers for their fairness and their patience and I want to thank them for their understanding of this case and understanding of their problem. I will work with them in every way I can.

"At this time, as I said, I feel I agree with them in principle, but this is a big thing that involves the rights of several thousand people. I want to be fair and the Court has only one desire—to help the people. The Court does not desire to hurt anyone and we certainly do not want to deprive anybody of their rights. Therefore, I am not going to make any formal ruling on this Petition today. I want to consider this matter and it will be necessary that I have many conferences with these three attorneys, who are all interested in this case, but I think they are reasonable men and I think that we can work this thing out. I will let the attorneys know later when I want to see them and we will go to work on this problem.

"The Court will be in recess."

At the conclusion of the hearing, from the transcript of which we have quoted freely to give a true picture thereof, the court entered the following order, on March 30, 1953, to wit:

"Order

"This cause coming on to be heard in open Court on March 19, 1953, upon the Petition of the Board of Trustees of the Town of Atrisco Land Grant, a corporation, filed herein on February 17, 1953, and upon Supplemental Petition filed herein on March 17, 1953, and a transcript of the testimony of the proceedings having been reduced to writing and filed herein and the Court having taken the matter under advisement and having considered the same, and the Court being fully advised in the premises,

"It is, therefore, ordered adjudged, and decreed:

"1. That the Court agrees in principle with the matters set forth in said Petitions and concludes as a matter of law that the relief sought in said Petitions should be granted; that is to say, that the Board of Trustees of the Town of Atrisco Land Grant should be permitted to survey and divide 10,-000 acres, more or less, of the said Grant, to be sold to the heirs of the Grant, in principle, in the manner and

form set forth in said Petitions and under the supervision of this Court.

"2. That a Special Master should be appointed by the Court to work out the details of this matter, to arrange for the financing of the same in cooperation with the attorney for the Grant, the Board of Trustees, and the attorney for the protesting heirs who appeared at said hearing.

"3. It is further ordered that, whereas, the Court reposes special trust and confidence in the ability and integrity of the Honorable Dale B. Walker, attorney at law and member of the Bar of this Court, that he, the said Dale B. Walker, be and hereby is appointed Special Master herein to handle the details of the proposed transactions as approved by this Order and to function under the supervision of this Court and to make periodic reports to this Court.

"4. It appearing to the Court that Mr. Dale B. Walker has heretofore appeared herein as attorney for a few of the heirs who represent only a minor, fractional part of the heirs of the Grant interested in this proceeding and that Mr. Walker's appearance was primarily by direction of this Court and as friend of this Court, he is relieved from further representing those clients for whom he has appeared herein. Mr. Walker is instructed to withdraw his appearance, if he has not previously done so, and if appearance for these persons is not entered by other counsel, then the Court will designate counsel to continue to represent them.

"It is so ordered.

"Done in open Court this 30th day of March, 1953."

Thereafter, on to wit, April 22, 1954, the appellants before us, filed in said cause their petition, as hereinabove recited, alleging themselves to be residents of the Town of Atrisco Grant, residing within its exterior boundaries, and either descendants of the original incorporators and resident property owners and taxpayers living within the Grant for a period of five years, last past, or resident property owners and taxpayers living within the Grant who have been such residents and taxpayers for more than five years, last past, and suing on behalf of themselves and others similarly situated.

The allegations of the petition were summarized in the opening paragraphs of this opinion and will not be repeated here. The relief prayed for was, also as stated above, that the order of the court authorizing and approving the distribution of the common lands of the Grant as in the petition set forth be vacated and held for naught. Under date of February 6, 1956, the court, Judge Robert Reidy presiding, entered an order dismissing said petition,

from which order of dismissal this appeal is prosecuted. The order allowing the appeal further provided for a stay of proceedings looking to distribution of the common lands involved as proposed by the order sought to be vacated pending determination of this appeal.

The petitioners below, who are the appellants before this court, present two points in support of their claim for reversal of the trial court's action in dismissing the petition protesting the proposed distribution of some 10,000 acres of the common lands of the Grant. Their first point reads, as follows:

"The orders entered by the trial court authorizing distribution to so-called heirs of the Atrisco Grant by lottery were void as beyond the court's jurisdiction."

The foregoing Point I is based upon appellants' assignments of error Nos. 2, 4 and 5, which read:

"2. The court was without jurisdiction to authorize or approve the distribution of land being attempted by the Board of Trustees of the Town of Atrisco Grant."

"4. The Town of Atrisco Grant is a community land grant and quasi municipal corporation, and its assets are being dissipated by the proposed distribution in violation of law.

"5. The court erred in dismissing the petition filed April 22, 1954 by Jake Armijo, et al., and allowing the distribution of 70 tracts of land to the persons named in the Order filed February 6, 1956."

The Town of Atrisco was organized as a corporation under the authority of 1953 Comp. §§ 8–2–1 through 8–2–18, as amended, and took on the character of a quasi-municipal corporation. Herrera v. Zia Land Co., 51 N.M. 390, 185 P.2d 975; Kavanaugh v. Delgado, 35 N.M. 141, 290 P. 798; Merryfield v. Buckner, 41 N.M. 442, 70 P.2d 896; Board of Trustees of Town of Torreon Land Grant v. Garcia, 32 N.M. 124, 252 P. 478.

The Grant was before this Court in the case of Armijo v. Town of Atrisco, supra. It was there held to be a community land grant vested with a fee-simple title to the common lands of the Grant. Of course, the lands owned by the Grant must be administered in conformity with the statutory law cited, supra, under which the Grant was incorporated, as amended.

As disclosed by a reading of the opinion in Armijo v. Town of Atrisco, supra, the Grant whose common lands are the subject of this suit was originally made by the King of Spain, through the then Governor and Captain General of the Kingdom and Province of New Mexico, about 1700 A.D., to the inhabitants and settlers of the community of Atrisco, through its founder,

452

Fernando Duran y Chavez and contained 41,000 acres of land. Later on, a petition was presented to Pedro Fermin de Mendinueta, Governor and Captain General of New Mexico by fifteen citizens of Atrisco, praying that they be granted an additional 25,000 acres of land adjoining the first Grant to be used for grazing and as a source of firewood. Accordingly, this petition was granted. While some portions of the new Grant were designated for certain individuals, it was clearly understood that practically all of the lands of the new Grant were to be used in common by the residents of the colony of Atrisco.

Subsequently, as already indicated, the Grant was incorporated under the authority of L.1891, c. 86 (1953 Comp. §§ 8–2–1 to 8–2–18) which though amended from time to time, is still in effect, substantially in its original form. The Grant was approved by the Court of Private Land Claims, and a patent issued by the United States to the Town of Atrisco, and to their successors in interest and assigns on May 5, 1905, covering 82,728 acres.

The act under which the Grant was incorporated bestowed certain powers upon the corporation. 1953 Comp. § 8–2–2, among other things, provides:

"* * * To sell, convey, lease, mortgage or otherwise dispose of so much of the land of the grant under their management and control as is held in common by the owners and proprietors.

"Provided, however, that no sale of the lands held in common can be made to persons who are nonheirs of the grant unless a majority of such heirs present at a mass meeting to be called fifteen (15) days in advance thereof by the president of the board of trustees vote in favor of any proposed sale to nonheirs, and Provided, further, that no lease of the lands held in common can be made to any person whatsoever for a period of time exceeding twenty (20) years; * * *."

The portion of this section following the proviso was added by amendment by L. 1933, c. 47, § 2.

It is further provided by 1953 Comp., § 8–2–18, as follows:

"Whenever the words 'owners and proprietors' are used in this act (article) they shall in all cases be construed to mean the members of the colony, community or town to which said grant was originally made, or their successors, and all persons residing within the exterior boundaries of such grant who have so resided continuously for not less than five (5) years, who claim to have improvements thereon, and who have paid taxes levied on such improvements, and who own one (1) or more tracts or parcels of land within such

exterior boundaries. Providing, however, that only such persons who are members of the colony, community or town to which said grant was originally made or their heirs and descendants residing within the exterior boundaries of such grant and who own one (1) or more tracts or parcels of land within such exterior boundaries shall be qualified or permitted to participate in the elections provided in this chapter (article) or to hold office as an officer or trustee of the grant."

The portion of the section quoted following the proviso here likewise was added as an amendment by L.1939, c. 202, § 1.

We think a mere reading of the transcript of proceedings looking to a sale or distribution of 10,000 acres of the common lands of the Grant will disclose or prove the case for appellants, petitioners below. From beginning to end thereof the want of due process fairly leaps from the pages of the record. At the very beginning in noting the appearance of counsel for certain parties, note the following:

"Dale B. Walker,
"Attorney for *some* of the
    Atrisco Grant Heirs." (Emphasis ours.)
"Gordon W. Coker,
"Attorney for *some* of the
    Atrisco Grant Heirs." (Emphasis ours.)

This prompts the inquiry whether anyone was there representing the *absent* heirs, if such a category of parties actually exists. As counsel for appellants pertinently state, no appearance seems to have been entered by anyone for any of the owners and proprietors of the Grant.

Furthermore, it was frankly stated by counsel that they were determining rights to beneficial interest in the Grant, using as a base a portion of the record listing 233 supposed heirs, found in a copy of the files in the case of James M. Hubbell v. Town of Atrisco, cause No. 22,606. It was the record in this case which was sought to be used in the trial out of which the former appeal arose, as res adjudicata. The trial court properly rejected so much of this record as was produced in that case, which action we approved in Armijo v. Town of Atrisco, supra, because no final judgment or order had ever been entered in the case.

It is to be noted from recitals in portions of the transcript of the hearing before the court on March 19, 1953, copied supra, that the cause was then heard before Judge Arledge on a petition of Town of Atrisco, a corporation, filed February 17, 1953, and supplemental petition of said Town filed March 17, 1953. In the course of the proceedings the court adverted to the fact that notice of the hearing had been given by a publication, one time, in each of the two Albuquerque papers, the Jour-

nal and the Tribune. The notices appear in the transcript and are signed by John A. Brunacini as attorney for Town of Atrisco along with proof of publication.

By what authority, statutory or otherwise, the attorney published said notice, unless based on a direction, apparently oral, from the trial judge to one of the attorneys to do so, nowhere appears. There was here no affidavit for publication of a summons by publication as per rules of civil procedure. Indeed, no summons of any kind was ever issued by clerk of the court and under its seal, touching the hearing.

As a result of the hearing on March 19, 1953, Dale Walker, an attorney, was appointed a Special Master to be later succeeded by Peter Gallagher in that capacity. Under date of August 3, 1953, there appears in the transcript a report of progress, entitled "Court's Message to the Atrisco Land Grant." The Preamble to the Message and certain portions thereof, follow:

### "Court's Message to the Atrisco Land Grant

"On the 3d day of August, 1953, at the hour of three o'clock p.m., the following message was delivered by the Honorable R. F. Deacon Arledge, District Judge, Second Judicial District, Division Two, to the members of the Atrisco Land Grant and their counsel, to-wit: Gordon W. Coker, Esquire, John N. Brunacini, Esquire, and Dale B. Walker, Esquire, Special Master herein:

\*    \*    \*    \*    \*    \*

"We are going to have to work one Section at a time. We will start with one Section, distribute that, get the money in, pay the surveyor, pay for the costs of the abstracts of title, and, when we have finished with that Section, then we will move to another Section. After we get going, we will move as fast as we can. That seems to be the will of everyone connected with this matter.

\*    \*    \*    \*    \*    \*

"Now, the Board of Trustees of the Atrisco Land Grant have decided, I am advised, that they want to start with this 'Black Lease' and they want to sell each tract for $100. So we will have the map made and the Special Master will put the names of the heirs who are entitled to buy this land in a big box, like a jury box, and, at a public place, at a public time, which will be announced to all of you, he will shake up that box and draw a name out. The first name drawn out of the box will have a right to purchase Tract Number One for $100. Now, the man who has that right to make that purchase for $100, will be given ninety (90) days in which to make up his mind. If he does not

have the $100, I will advise him to go to one of these three lawyers and they will help him find the $100, if he wants to make this purchase. In like manner, the second name drawn from the box will be given the right to purchase Tract Number Two, and the third name drawn will be given the right to purchase Tract Number Three, and the fourth name drawn will be given the right to purchase Tract Number Four, and we will go on through in that manner until we have determined who has the right to purchase each and every one of the 108 tracts.

"Now, the names drawn from the box, that is the names that we put in the box originally, will be heirs of the Grant and persons who have not been given five acres heretofore. That, also, is the decision of the Board of Trustees of the Atrisco Land Grant.

"There are some people who claim they are heirs and have not had a hearing as yet. For this first drawing, we are going to limit that to persons who have already been adjudged, in the manner determined, to be heirs; but, we are not going to forget the rights of those people who say they are heirs. We will have to work out the mechanics later, but those people will be given a hearing before the Special Master and he will make a

report to the Court and, if necessary, the Court will hold another hearing. I don't know all the details on that, but somewhere along the line, if we determine there are many new heirs, that is, heirs whose names are not decided in the case of 'James M. Hubbell vs. The Town of Atrisco,' Cause No. 22606, we will hear these heirs and those so determined will come in on the future drawings."

It appears from the record that the number of applicants claiming beneficial interests in the Grant is in excess of 2,-000. A careful screening of same by a committee chosen for the purpose by the President of Board of Trustees of the Grant reduced the number to 1,801, rejecting 333 applications. These facts we mention only for the purpose of indicating what a monumental task faces any tribunal attempting to ascertain who are the rightful owners of beneficial interests in the Grant. It was taken for granted, as well as asserted to the court by counsel that the rightful owners, or some of them, would be found scattered over the three states of New Mexico, Colorado and California.

We think enough appears to convince anyone that, however worthy the effort, the means about to be employed for making a distribution of the lands of the Grant, not only amount to a violation of the statute law of this state prohibiting

456

lotteries, State v. Jones, 44 N.M. 623, 107 P.2d 324, as claimed in appellants' Point I, but as well amount to a dissipation of the assets of the corporation, contrary to law, as claimed in their Point II. In fine, the plan of distribution proposed discloses a pronounced absence of primary and elemental concepts of due process and equal protection of the laws, in violation of constitutional guaranties existing in favor of owners of the beneficial interest in the common lands of the Grant.

As pointed out by appellants' counsel, the lucky participant in the drawings, or lottery, for an outlay of $50 to $100, as the case might be, may draw a tract worth $1,000, whereas the unlucky participant, finding his tract largely occupied by an arroyo, or the victim of ruinous erosion, might secure land having a value not to exceed the amount of his deposit.

Just how the Special Master was to determine who are, or were, the true owners of beneficial interests in the common lands of the Grant is not disclosed. Whether he as a roving emissary should tour the highways and by-ways seeking individuals whom he might determine had the character of an "owner," "proprietor," or "heir," based on sworn testimony, or otherwise, the record leaves in doubt.

Indeed, confusion exists in the minds of counsel, as indicated by the record, whether the phrase "owners and proprietors," as defined in the act (1953 Comp. § 8-2-18) and the word "heirs" as used in later amendments thereto, are synonymous. We do not presume to say beyond announcing the obvious fact that the descendants of the original owners of beneficial interests in the common lands have acquired by descent, or devise, whatever rights, privileges and interests their ancestors possessed.

The fact that a large metropolitan area has grown up around this Grant and its common lands since its inception more than two and a half centuries ago, considered in the light of the fact that the original settlers and inhabitants have multiplied until their progeny now approximate two to three thousand in number scattered over, at least, three states of the west, presents a tangled skein of legal imponderables well calculated to tax the wisdom and ingenuity of a Solomon for solution.

It is not for us to say how it must, or can, be solved. Counsel for appellants have given it as their opinion that it can not be done without an appeal to the legislature. Whether it can afford the needed aid we do not venture to say. It is almost as if one were asked to name the heirs of the Pilgrims who landed at Plymouth Rock, or to bring it closer to home, to prepare a roster of the descendants of the Conquistadores. In truth, that is exactly what is sought here, to wit, the descendants of a select group of those Conquista-

dores. Such is the big problem presented by these tangled facts.

But, hard as the problem may be, difficult as it is to place these common lands in a state that will render them marketable, there lies within the body of the law an ability to do that very thing. It is a maxim of equity that there is no right without a remedy. Hence, it is that somewhere within the vast reservoir of equitable relief, whether by suits to quiet title, class suits, sale of the common lands and distribution of the proceeds through an interpleader suit, or otherwise, may be found the answer to the problem posed here. That it will, perhaps, be expensive there can be little doubt. That it will require the talent of the best legal minds to work out a feasible plan, is equally obvious.

But whatever the means employed, due process requirements of notice and an opportunity to be heard must be observed and equal protection of the laws must be accorded all.

We entertain no doubt that if these conditions are met, the "owners and proprietors," or their "heirs, successors, and assigns," whoever they are, whatever they are and, wherever they may be, can be brought before the court, or become debarred for failure to appear, and their rights be determined and adjudicated.

It is enough to settle this appeal, for us to say that they were given no such opportunity in the record before us. Accordingly, the judgment will be reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

It is so ordered.

McGHEE, COMPTON and KIKER, JJ., concur.

LUJAN, C. J., not participating.