815 P.2d 623

**Debra LETT, nee Nuanes, and Frank N. Nuanes, Plaintiffs–Appellants,**

v.

**WESTLAND DEVELOPMENT CO., INC., Defendant–Appellee.**

**No. 19471.**

Supreme Court of New Mexico.

Aug. 2, 1991.

Rehearing Denied Aug. 21, 1991.

Chavez Law Offices, Lorenzo A. Chavez, Albuquerque, for plaintiffs-appellants.

Robert S. Simon, Albuquerque, for defendant-appellee.

## OPINION

RANSOM, Justice.

This suit against Westland Development Company, Inc. seeks to have ninety-nine and thirty-three shares of Westland common stock issued, respectively, to plaintiffs Debra Lett and Frank Nuanes. Their claim is based on the fact that they are the successors in interest to Peggy Garcia who died intestate in 1957. Peggy Garcia was one of the several thousands of heirs to the Atrisco land grant. Debra Lett is Peggy's daughter, Frank Nuanes was her husband.

The history of ownership of the Atrisco grant is reviewed in some detail in *Armijo v. Town of Atrisco*, 56 N.M. 2, 239 P.2d 535 (1951). We note here only that, pursuant to 1891 N.M. Laws, ch. 86, persons claiming to be owners of this communal grant did incorporate in 1892 under the name of the Town of Atrisco, a quasi-municipal corporation. *Armijo v. Town of Atrisco*, 62 N.M. 440, 451, 312 P.2d 91, 98 (1957). In 1905 the United States government recognized the land claim and issued a patent for 82,728 acres to the Town of Atrisco and to their successors in interest and assigns. *Id.* at 452, 312 P.2d at 99. In 1967, pursu-

ant to 1967 N.M. Laws, ch. 43, Section 1, now compiled as NMSA 1978, Section 49–2–18, that corporation was converted into Westland Development Company, Inc., a domestic capital stock corporation. Subsequently, over 3,000 known heirs to the grant were issued shares of stock in exchange for their interest in the grant property.

The entitlement of Lett and Nuanes to shares in Westland, as successors in interest to Peggy Garcia, is not in dispute. The only controversy surrounds whether those shares are burdened by certain restrictions on transfer purportedly placed upon all Westland shares in 1982. In that year, by a two-thirds vote of the shareholders, Westland amended its articles of incorporation to prohibit the transfer or registration of shares, with certain limited exceptions, to anyone other than a lineal descendent of one of the original incorporators of the Town of Atrisco in 1892.[1] Westland contends that the shares due Lett and Nuanes should bear this restriction.

In the court below Westland tendered the requisite number of shares to Lett and Nuanes stating, in a motion for summary judgment, that the tender gave to each of them their proper intestate interest. Lett and Nuanes refused to accept the tendered shares because the stock certificates were issued with the restrictions on transfer. In their response to the motion for summary judgment, Lett and Nuanes attacked the validity of the restrictions and argued that the tendered shares were not the ones to which they were entitled because the restrictions were not in effect in 1967 when they were entitled to the new capital stock, their having succeeded to their interest in 1957 upon the death of Peggy Garcia. The district court granted summary judgment in favor of Westland and dismissed the suit. The court stated that the issue of whether Lett and Nuanes were entitled to *un*restricted shares was raised in their response to Westland's motion for summary judgment, and "since a prayer for unrestricted shares was not a part of the plain-

tiffs' complaint ... that is not a matter before this court since the plaintiffs did not amend their complaint for such unrestricted shares."

Lett and Nuanes appeal challenging the propriety of the order granting summary judgment. They also challenge the validity of the restrictions both generally and with reference to them as individuals. We reverse and hold that it was not necessary for Lett and Nuanes to have made a specific request for unrestricted shares in their complaint. We also hold that because Lett and Nuanes had no opportunity to participate in the decision to amend the articles of incorporation and to adopt the restrictions on transfer, those restrictions cannot burden any shares due them at this time.

■ *Plaintiffs not required to have made a specific request for unrestricted shares.* An important purpose of our rules of civil procedure is to avoid the tyranny of formalism. Rule 8(A) requires only that a claim for relief contain: (1) allegations of venue, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which the pleader deems himself entitled. SCRA 1986, 1–008(A). Rule 15 provides for the liberal amendment of pleadings so that litigation may be disposed of on the merits. SCRA 1986, 1–015. Rule 54(D) provides that, except in cases of default judgments, every other final judgment shall grant the relief to which a party is entitled, "even if [that] party has not demanded such relief in his pleadings." SCRA 1986, 1–054(D). While a prayer for relief may be helpful in specifying the contentions of the parties, it forms no part of the pleader's cause of action, and the prevailing party should be given whatever relief he is entitled to under the facts pleaded and proved at trial. *See* 6 J. Moore, W. Taggart, & J. Wicker, *Moore's Federal Practice* ¶¶ 54.60, 54.62 (2d ed. 1991) (discussing Fed.R.Civ.P. 54(c), the federal counterpart to SCRA 1986, 1–

---

**1.** Actually, the amendment mistakenly references the date of the original incorporation as 1891.

We attach no legal significance to this error.

054(D)); 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2662 (1983) (same); *accord State ex rel. Newsome v. Alarid,* 90 N.M. 790, 798–99, 568 P.2d 1236, 1244–45 (1977); *State ex rel. Gary v. Firemans' Fund Indem. Co.,* 67 N.M. 360, 365, 355 P.2d 291, 294–95 (1960).

The pleadings in this case stated that the claim of Lett and Nuanes was based upon their status as successors in interest to Peggy Garcia, a lineal descendant of one of the original incorporators of the Town of Atrisco. As such, Lett and Nuanes had a right, albeit one not asserted until 1988, to have shared in the original distribution of Westland stock after its incorporation in 1967. Lett and Nuanes asserted that they were unaware of their right to receive the shares due Peggy Garcia until 1987 when they were able to examine Westland's genealogy records. The restrictions on transfer were adopted in 1982. The implicit question these facts pose is whether Lett and Nuanes' interest in shares, created in 1967, is burdened by the restrictions. By simply requesting the shares of Westland stock as successors to Peggy Garcia, the pleadings gave fair notice that Lett and Nuanes were claiming a right to have shared in the original distribution of corporate stock and for this reason it was unnecessary for them to have made a specific request for "unrestricted shares." The allegations in the complaint, if true, are sufficient to make such relief appropriate.

*Persons entitled to share in original distribution of corporate stock must have opportunity to participate in shareholders' decision to impose restrictions on transfer.* Lett and Nuanes challenge the general validity of the restrictions arguing that they represent an unreasonable restraint on alienation. They also argue that the restrictions, even if reasonable, cannot fairly be imposed on the shares that are due them. Because we agree with this latter proposition we find it unnecessary to address the general validity of the restric-

tions and on this matter we offer no opinion.

▮ Under the common law, restrictions on the alienation or transfer of corporate stock are not viewed with favor and are strictly construed. *Valley Nat'l Bank v. Arthur (In re Estate of Martin),* 15 Ariz. App. 569, 570, 490 P.2d 14, 15 (1971), *petition for review vacated,* 108 Ariz. 536, 502 P.2d 1355 (1972); *Earthman's, Inc. v. Earthman,* 526 S.W.2d 192, 202 (Tex.Civ. App.1975); *see also* Annotation, *Restrictions on Transfer of Corporate Stock as Applicable to Testamentary Dispositions Thereof,* 61 A.L.R.3d 1090, § 3 (1975). While the Model Business Corporation Act expressly provides that a corporation may impose such restrictions through its articles of incorporation, bylaws, agreement among the shareholders, or agreement between the shareholders and the corporation, 1 *Model Business Corporation Act Annotated* § 6.27(a) (3d ed. & Supp.1991), including a prohibition against the transfer of shares "to designated persons or classes of persons," *id.* § 6.27(d)(4), New Mexico has not adopted this provision of the model act.[2] *See* NMSA 1978, §§ 53–11–1 to –18–12 (Repl.Pamp. 1983 & Cum.Supp.1989) (New Mexico Business Corporation Act). Lett and Nuanes argue (without citation to authority) that the transferability of corporate shares may not be restricted in the absence of specific statutory authorization. This assertion may take their argument too far.

Nonetheless, one provision of our corporation statutes does mention transfer restrictions. *See* § 53–12–2(B)(2) (Cum.Supp. 1989). In general, Section 53–12–2 sets forth certain provisions that are either required (subsection A) or permitted (subsection B) to be set forth in the articles of incorporation. Subsection (B)(2) provides that the articles of incorporation may contain provisions not inconsistent with law regarding "the definition, limitation and

---

**2.** Numerous states have enacted provisions based on Section 6.27 of the Model Business Corporation Act expressly authorizing the imposition of restrictions on the transfer or registration of corporate shares and prescribing rules to

govern the use of such restrictions. *See, e.g.,* 1 *Model Business Corporation Act Annotated* § 6.27, at 431–32.1 (3d ed. & Supp.1991) (statutory comparison).

regulation of the powers of the corporation, the directors and the shareholders, or any class of the shareholders, including restrictions on the transfer of shares." This provision was enacted in 1983. *See* 1983 N.M. Laws, ch. 304, § 43. Prior to this time there was in effect, between 1968 and 1975, a similar provision stating that the articles of incorporation could contain "any provision, not inconsistent with law, which the incorporators elect to set forth ... for the regulation of the internal affairs of the corporation, including any provision restricting the transfer of shares." *See* 1967 N.M. Laws, ch. 81, § 50 (effective January 1, 1968; amended by 1975 N.M. Laws, ch. 64, § 27).[3]

The model act states that a restriction on the transfer of corporate stock does not affect shares issued before the restriction is adopted unless the holders of those shares are parties to the restriction agreement or voted in favor of the restriction. 1 *Model Business Corporation Act Annotated* § 6.27(a) (3d ed. & Supp.1991). This is in essence the question to be answered here. Should the shares due Lett and Nuanes be burdened with the restrictions (regardless of whether transfer restrictions are, in general, authorized by statute) in the absence of their consent and lack of any opportunity whatsoever to participate in the decision to amend the articles of incorporation and adopt the restrictions? We think not.

Our corporation statutes do provide for the liberal amendment to articles of incorporation. Section 53-13-1 states that "[a] corporation may amend its articles of incorporation from time to time in as many respects as may be desired, so long as its articles of incorporation, as amended, contain only such provisions as might be lawfully contained in original articles of incorporation at the time of making the amendment...." NMSA 1978, § 53-13-1 (Repl. Pamp.1983). Without limitation on this so-called "general power of amendment," Section 53-13-1 provides a laundry list of fifteen permissible types of amendments. *Id.* We note that in several of the examples provided the provision expressly states that the amendment may affect shares already issued. *Id.* § 53-13-1(F) to -13-1(K). Thus, a corporation certainly may alter its articles of incorporation over the objections of a minority of shareholders who might oppose the proposed changes, and for certain types of amendments the objectionable changes will affect the shares of that minority even though the amendment may fundamentally alter the nature of their investment. In many such situations shareholders who object to the proposed changes in the articles of incorporation may obtain relief under Sections 53-15-3 and 53-15-4. These provisions provide that "dissenting" shareholders may obtain payment for their shares in the event of certain specific types of proposed corporate action. *See generally* NMSA 1978, §§ 53-15-3 to -15-4.[4] However, neither the laundry list of permissible amendments in Section 53-13-1, nor the list of contemplated situations in

---

**3.** Although not determinative of the questions involved here, we point out that these statutes were not in effect when Westland was incorporated in 1967 or when its articles of incorporation were amended in 1982.

**4.** With respect to amendments to the articles of incorporation, Section 53-15-3(A) provides that dissenting shareholders may obtain payment for their shares if the amendment would materially and adversely affect the rights appurtenant to their shares in that it:

(a) alters or abolishes a preferential right of such shares;

(b) creates, alters or abolishes a right in respect of the redemption of such shares, including a provision respecting a sinking fund

for the redemption or repurchase of such shares;

(c) alters or abolishes an existing preemptive right of the holder of such shares to acquire shares or other securities; or

(d) excludes or limits the right of the holder of such shares to vote on any matter, or to cumulate his votes, except as such right may be limited by dilution through the issuance of shares or other securities with similar voting rights.

NMSA 1978, § 53-15-3(A)(4)(a) to (d). A dissenting shareholder with a right to obtain payment for shares under Section 53-15-3 has no right at law or in equity to attack the validity of the corporate action. NMSA 1978, § 53-15-3(D) (adopted 1983). In other words, the remedy was intended to be exclusive.

Section 53–15–3 wherein shareholders may dissent and obtain payment for their shares, mentions amendment of the articles of incorporation to adopt restrictions on transfer.

We note that the present version of the Model Business Corporation Act has omitted its earlier list of permissible amendments as "prolix and unnecessary to carry out the policies of the section." 3 *Model Business Corporation Act Annotated* § 10.01 official comment, at 1148 (3d ed. & Supp.1991). However, the official comment goes on to state that the *only* exception to this "unlimited power of amendment" is Section 6.27. *Id.* at 1148–49. That provision, as we have mentioned, provides that a restriction on the transfer of corporate stock does not affect shares issued before the restriction was adopted unless the holders of those shares are parties to the restriction agreement or voted in favor of the restriction. 1 *Model Business Corporation Act Annotated* § 6.27(a) (3d ed. & Supp.1991).

■ In view of these considerations, unless the original Westland articles of incorporation provide for the subsequent imposition of transfer restrictions on nonconsenting shareholders, and in the absence of similar statutory authorization, then the 1982 amendment adopting the restrictions should not affect the shares due Lett and Nuanes.[5] We so hold in view of the narrow effect to be given restrictions on alienation of corporate stock under the common law. If Atrisco heirs, or their successors, still have the right to receive the corporate shares originally due them, then those individuals have the right to receive the full measure of that property interest unaffected by intervening events that might reduce that interest.

We discern no intervening equities in this case that would lead us to any contrary result. Westland argues that the shares due Lett and Nuanes should bear the restrictions because the shares due Peggy Garcia were distributed to her brother and sister, Priscilla and Tony Garcia, and after the amendment to the articles of incorporation those shares were reissued to them in restricted form. After the adoption of the restrictions, the Garcias (and other shareholders), at Westland's request, returned their stock certificates to the corporation in order that certificates could be reissued with the restrictions on transfer printed on the face of the certificate. When Lett and Nuanes commenced this action, Westland joined Priscilla and Tony Garcia as third-party defendants to this suit claiming that any right of Lett and Nuanes to obtain shares lay against the Garcias rather than against Westland. In recognition of the legitimate claims of Lett and Nuanes, the Garcias assigned 132 shares to Lett and Nuanes and returned the stock certificates to Westland. This was the source of the shares Westland tendered to Lett and Nuanes.

The fact that Peggy Garcia's shares were issued to her brother and sister as her supposed successors in interest is of no importance. Lett and Nuanes were not in any sense in privity with Peggy's brother and sister, nor were they in any line of succession with them. Lett and Nuanes claim directly from Peggy, and Westland's erroneous dealings with Peggy's brother and sister in no way should affect their interests.

Westland also raises a statute of limitations question that appropriately turns on the contested point at which Lett and Nuanes may have learned they were entitled to claim Westland shares as successors in interest to Peggy Garcia. Lett and Nuanes state that the trial court rejected Westland's statute of limitations argument in ruling on an earlier motion. Assuming a statute of limitations question remains to be decided in this case, the facts regarding that issue may be resolved on remand.

For the above reasons we reverse the order of the district court granting summary judgment in Westland's favor and we

---

**5.** We do not decide whether the amendment affects the shares of dissenting shareholders or those who for any other reason did not join with the majority of Westland shareholders in voting for the amendment.

remand this cause to that court for further proceedings consistent with this opinion.

IT IS SO ORDERED.

SOSA, C.J., and MONTGOMERY, J., concur.