**DIXIE PIPE SALES, INC., Appellant,**

v.

**Rebecca Thompson PERRY and Edward H. Thompson, Appellees.**

**No. B14–92–00008–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

June 25, 1992.

Rehearing Denied Aug. 6, 1992.

Robert W. Brown, Thomas C. Wright, Gus G. Tamborello, Houston, for appellant.

Roy Q. Minton, John L. Foster, Will G. Dickey, Megan Gabel, Houston, for appellees.

Before MURPHY, ROBERTSON and CANNON, JJ.

## OPINION

MURPHY, Justice.

This case concerns interpretation of a bylaw provision giving a closely held corporation the right of first refusal on a transfer of its stock. Dixie Pipe Sales (Dixie) filed a declaratory judgment action alleging it had the right to purchase stock devised to Rebecca Thompson Perry and Edward Thompson under a will. In two points of error, Dixie claims the trial court erred in holding that the right of first refusal restriction did not apply to a testamentary transfer. Concluding the bylaw provision applies to a testamentary transfer, we reverse the judgment of the trial court and render judgment that Dixie's motion for summary judgment be granted and appellees' motion be denied.

Dixie is a closely held corporation, primarily held by members of the Beeley family and their spouses. The bylaws of Dixie contain a provision giving the corporation right of first refusal on any stock transfer. Raymond Beeley received 4000 shares of stock in Dixie when it was incorporated. He owned those shares as community property with his wife, Irma. In her will, Irma left her residuary estate, which included her 2000 shares of Dixie stock, to a trustee for the benefit of her husband, Raymond Beeley. Upon Raymond's death, the trust estate was to be paid to Rebecca Thompson Taubert (now Perry) and Edward Thompson, Irma's niece and nephew. Irma died on September 12, 1979. Her 2000 shares were set aside to her trust for Raymond's benefit.

Raymond died on January 5, 1990. At that time, Rebecca Perry and Edward Thompson learned of the trust. Perry and Thompson subsequently sued Charles Johnson, a co-trustee and co-executor of Raymond's estate, alleging, inter alia, breach of fiduciary duties. That suit, still pending, was amended to allege claims of fraud and misconduct against Raymond's estate, Vinson & Elkins, Dixie, and Dixie's chairman, Robert A. Beeley.

On August 10, 1990, Johnson, as co-executor, delivered to Perry and Thompson, 2000 shares of Dixie stock in the form of a certificate issued to the estate of Irma H. Beeley. Three days later, Perry and Thompson delivered the stock to Dixie for transfer on Dixie's books to their names. Dixie refused to transfer the stock and opted to pay appellees the book value of the stock under the right of first refusal contained in Dixie's bylaws. Dixie tendered checks in the amount of $798,091.34 each to Perry and Thompson. Dixie claimed that amount represented the book value of the stock as calculated according to the bylaws of the corporation. Appel-

lees returned the checks to Dixie and demanded that the stock be re-issued in their names.

Dixie then initiated this declaratory judgment action requesting the trial court to declare the rights of the parties. Dixie filed a motion for partial summary judgment claiming the right of first refusal restriction on the transfer of the stock applied to a testamentary transfer. Appellees filed a cross-motion for summary judgment claiming the restriction applied only to a voluntary sale, and not a transfer under a will. The trial court denied Dixie's motion for summary judgment and granted appellees' cross-motion for summary judgment. The court entered a judgment declaring that the right of first refusal restriction did not apply to appellees' request for re-issuance of the stock in their names. Dixie appeals from that judgment.

Article VI, Section 1 of the Stock Purchase Agreement provides:

*Section 1. Restriction on Transfer.* No shares of the common stock of the corporation (in this Article VI referred to as "Stock"), or any interest in Stock, shall be transferable or transferred or sold or otherwise disposed of, except as hereinafter provided in this Article VI. Each holder of Stock (in this Article VI referred to as "stockholder") shall not sell, assign, transfer, pledge, encumber or in any way dispose of, except to any administrator or executor or legal representatives of any deceased stockholder, any Stock that may now or hereafter be owned by him, nor shall any such Stock be transferable except as provided in Section 2 hereof.

*Section 2. Notice.* Each stockholder prior to the disposition of any Stock shall give written notice by post-paid registered mail, which shall be effective on the day it is received by the corporation at its principal office

\*　　\*　　\*　　\*　　\*　　\*

[I]n said notice [each stockholder] shall offer to sell and transfer such shares to the corporation and, subject only to the prior right of the corporation to acquire any of such shares, to its stockholders or

such of them as may elect to purchase, severally or collectively, any of such shares

(i) at a price per share equal to the cash price or consideration per share specified in such notice, or

(ii) in the event that no consideration is to be received by the stockholder for such share, the value per share of such shares as determined by Section 4 hereof.

Both parties agree that, under Texas Business Corporation Act § 2.22 (Vernon Supp.1992), the restriction found in Dixie's bylaws is valid. The question is whether Dixie is entitled to the right of first refusal when the transfer is one made under a will.

■ Restrictions on the power of a corporate shareholder to transfer his or her shares of stock may validly be imposed in the charter or the bylaws of a corporation, provided such restraints are reasonable and not contrary to public policy. The reasonableness of such a restriction is ordinarily to be determined by applying the test of whether the provision is sufficiently necessary to the particular corporate enterprise to justify overruling the usual policy of the law in opposition to restraints on the alienability of personal property.

The Texas Business Corporation Act provides:

Any restriction on the transfer or registration of transfer of a security of a corporation, if reasonable and noted conspicuously on the certificate or other instrument ... shall be specifically enforceable against the holder of the restricted security or any successor or transferee of the holder.

TEX.BUS.CORP.ACT ANN. art. 2.22(C) (Vernon Supp.1992).

As originally enacted, article 2.22(C) provided that any reasonable restriction on transfer of securities of a corporation may be enforced "against the holder of the restricted security or any successor or transferee of the holder including an executor, administrator, trustee, guardian, or other fiduciary entrusted with like responsibility for the person or estate of the holder."

Act of Sept. 6, 1955, 54th Leg., R.S., ch. 64, 1955 TEX.GEN.LAWS 239, *amended by* Act of August 28, 1989, 71st Leg., R.S., ch. 801, § 8, 1989 TEX.GEN.LAWS 3618. In 1989, article 2.22(C) was amended to delete the reference to executors, administrators, trustees, guardians or other fiduciaries because those persons are clearly included in the terms "successor" and "transferee" and express reference to them is considered superfluous. HOUSE COMM. ON BUSINESS AND COMMERCE, Tex.H.B. 472, 71st Leg., R.S.

■ The particular significance of article 2.22 is that it makes the restriction in Dixie's bylaws applicable to Charles Johnson's transfer of the stock to Perry and Thompson. Johnson was the holder of the stock certificate and he was the executor of Raymond's will. Under article 2.22, the bylaw restriction "shall" apply to the transfer from the holder of the stock, including an executor, to a beneficiary under a will. There is no dispute that the restriction is noted conspicuously on the stock certificate. The only question remaining is whether the restriction is reasonable.

The provision in Dixie's bylaws is not unreasonable, but is calculated instead to advance legitimate objectives of both the corporation and its individual stockholders, that is, to keep the stock in the family. Such a restriction is inherently more "reasonable" when applied to the stock of a corporation having only a few shareholders who are active in the business and members of the same family, than when imposed on the stock of a corporation that has many shareholders who are not only unrelated to one another, but who, ordinarily, do not participate actively in the day-to-day management of the corporation. The restriction found in Dixie's bylaws is a reasonable restriction and is applicable to any disposition of Dixie's stock including that made under a will. To hold otherwise would give Irma Beeley more rights to transfer her stock in death than she had in life.

Perry and Thompson argue the law in Texas and in "every state that has considered the question, with the possible exception of Massachusetts," is that, unless the bylaw, or other applicable instrument, expressly provides otherwise, a right of the corporation to purchase stock does not arise in the event of death. Perry and Thompson then cite to several cases in other jurisdictions that have held that stock transfer restrictions are to be strictly construed, and that the restriction must be made expressly applicable to a testamentary transfer to be valid.

That is not the law in Texas. The Texas Business Corporation Act provides that a reasonable restriction noted conspicuously on the stock certificate shall be enforceable against the successor or transferee of the holder. An executor under a will is a successor or transferee of the holder. Therefore, Dixie's right of first refusal is triggered by Johnson's delivery of the stock to Perry and Thompson.

The trial court improperly granted appellees' motion for summary judgment. Dixie's right of first refusal applies to a testamentary disposition. We reverse the judgment of the trial court and render judgment for Dixie.