889 P.2d 870

Mike KERR, as Personal Representative of the Estate of Atherton Sinclair Burlingham, Deceased, Plaintiff–Appellee/Cross–Appellant,

v.

PORVENIR CORPORATION, a New Mexico Corporation, and George Kenneth Burlingham, Defendants–Appellants/Cross–Appellees.

No. 15429.

Court of Appeals of New Mexico.

Dec. 27, 1994.

Certiorari Denied Feb. 2, 1995.

D. Gregory Howard, Franch & Jarashow, P.A., Baltimore, MD, Clinton W. Marrs, Kemp, Smith, Duncan & Hammond, P.C., Albuquerque, for plaintiff-appellee/cross-appellant.

Kevin T. Riedel, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Las Cruces, for defendants-appellants/cross-appellees.

## OPINION

PICKARD, Judge.

This case involves the applicability of stock transfer restrictions to testamentary dispositions of shares in closely-held corporations. Defendants, Porvenir Corporation (Porvenir) and George Kenneth Burlingham (George), appeal from the district court's grant of summary judgment in favor of Plaintiff, personal representative of the estate of Atherton Sinclair Burlingham (Atherton). The district court ruled that certain Porvenir stock transfer restrictions are not applicable to testamentary dispositions of Atherton's stock and directed Porvenir to issue new stock certificates to the beneficiary of Atherton's will. Plaintiff brought a cross-appeal from the district court's grant of Defendants' motion to reconsider summary judgment and receipt of additional evidence accompanying that motion, which consisted of an amended statement of the stock transfer restriction. The issue on appeal is whether either the original or amended stock transfer restrictions prohibit Plaintiff from transferring Atherton's stock to a third party in accordance with Atherton's will. We conclude that neither restriction prohibits the petitioned-for transfer of stock and affirm the ruling of the district court. Because we find that the second restriction does not prohibit Plaintiff from transferring the stock, we need not reach the cross-appeal. We affirm.

Atherton died testate on July 18, 1987. Plaintiff was appointed personal representative of Atherton's estate on January 7, 1988. Porvenir was incorporated in the State of New Mexico on December 16, 1974. At the time of Atherton's death, there were only three holders of Porvenir stock: Atherton owned 200,000 shares of non-voting stock; George owned 200,000 shares of non-voting stock; and the Hilda S. Burlingham Testamentary Trust, George Kenneth Burlingham, trustee, owned 100 shares of voting stock.

Atherton's stock certificates bear the following stock transfer restriction:

> No shares of stock of the corporation shall be sold, pledged, or otherwise transferred by any shareholder without first offering such shares for sale to the corporation, and to the remaining shareholders. The offer shall be made in writing and shall set forth in detail all terms and conditions of any proposed sale, including the price, or any other disposition that the stockholder proposes to make of his shares. The corporation and the remaining shareholders shall have 30 days from the date of receipt of such written offer within which to acquire the shares of stock in question, and if the corporation and the remaining shareholders fail or refuse to acquire such shares, the shareholder shall be free to offer the same for sale or make such other disposition as he may desire.

This restriction was part of the original bylaws of Porvenir. The restriction in the bylaws of Porvenir was amended on August 5, 1990, after Atherton's death, to extend the time for response of the corporation and

other shareholders to one hundred eighty days and to include the following additional restriction:

> However, shares of stock (class A or B) may not be transferred by a fiduciary such as the trustee(s) of a trust, or the executor of an estate, until the fiduciary has first become an owner of record of these shares on the stock transfer books of the corporation. All restrictions on transfer apply each time ownership is transferred.

This additional restriction does not appear on Atherton's stock certificates.

After Plaintiff requested that Porvenir reissue stocks to the beneficiary of Atherton's will and Defendants refused that request, Plaintiff filed a declaratory action seeking a determination that the first restriction did not apply to testamentary dispositions and requesting a judgment ordering Porvenir to issue new stock certificates to the beneficiary. Both parties filed motions for summary judgment, and agreed to have the district court decide the case on the briefs with no oral argument. The district court, in entering its initial final judgment, considered the issue of "whether the restriction placed on the transferability of shares of stock applies to a testamentary transfer." The district court held that the restriction did not restrict Plaintiff's transfer of the Porvenir stocks to the beneficiary of Atherton's will and ordered Defendants to cooperate with Plaintiff in effectuating a transfer of the shares. Judgment was entered on October 19, 1993.

On October 20, 1993, Defendants moved for reconsideration of summary judgment, seeking to introduce the second transfer restriction, and claiming that in order to transfer the stock to the beneficiary of Atherton's will, a two-part transfer would have to be effectuated—from Atherton to Plaintiff and then from Plaintiff to the beneficiary. Defendants argued that when the stock was reissued to Plaintiff, the new restriction would be placed on the new certificates, which precluded the second transfer because of the restriction against testamentary transfers contained in the second restriction. Defendants conceded that the first transfer, from Atherton to Plaintiff, would not be sub-

ject to the second transfer restriction because "there is no evidence that [Atherton] consented to the modification of the stock transfer restriction language."

Plaintiff opposed Defendants' motion for reconsideration, contending that Defendants had failed to state adequate grounds for relief from the judgment pursuant to SCRA 1986, 1–060 (Repl.1992), or for a new trial pursuant to SCRA 1986, 1–059 (Repl.1992). The district court granted the motion for reconsideration, considered arguments and evidence from both parties including the new evidence submitted by Defendants, and again entered final judgment for Plaintiff. Defendants' cross motion for summary judgment was denied. Both parties filed timely notices of appeal.

Summary judgment is proper only if there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. *Koenig v. Perez,* 104 N.M. 664, 665, 726 P.2d 341, 342 (1986). The parties agree that no issues of fact exist, and the only question before the district court and this court is the applicability of the stock transfer restrictions to the petitioned-for transfer as a matter of law. "If the facts are not in dispute, but only the legal effect of the facts is presented for determination, then summary judgment may properly be granted." *Id.* at 666, 726 P.2d at 343.

The sole issue on appeal is whether either of the stock transfer restrictions prohibit the transfer of Atherton's stock to the beneficiary in Atherton's will without first offering the stock to Defendants. Stated more succinctly, the issue is whether either of the stock transfer restrictions apply to prohibit Atherton's testamentary transfer.

■ New Mexico adheres to the doctrine that "restrictions on the alienation or transfer of corporate stock are not viewed with favor and are strictly construed." *Lett v. Westland Dev. Co.,* 112 N.M. 327, 329, 815 P.2d 623, 625 (1991). We have not previously considered the issue of whether general restrictions on the transfer of stock apply to testamentary transfers without specific reference to testamentary transfers. We there-

fore look to other jurisdictions for guidance on this issue.

While there are a limited number of cases that have considered the issue, there is a majority and a minority position. *See generally* Joseph T. Bockrath, Annotation, *Restrictions on Transfer of Corporate Stock as Applicable to Testamentary Dispositions Thereof,* 61 A.L.R.3d 1090 (1975 & Supp.1994). The minority either implicitly rejects the rule of strict construction of restrictions on the transfer of stock, *see id.* § 3, at 1093 n. 23; *Boston Safe Deposit & Trust Co. v. North Attleborough Chapter of Am. Red Cross,* 330 Mass. 114, 111 N.E.2d 447, 449 (1953); *Colbert v. Hennessey,* 351 Mass. 131, 217 N.E.2d 914, 920, 921 (1966); *Chadwick v. Fuller,* 867 P.2d 480, 481 (Okla.Ct.App.1993), *cert. denied* (Jan. 12, 1994), or relies upon state corporation law and legislative history to find that testamentary transfers are contemplated by general transfer language contained in stock transfer restrictions. *Dixie Pipe Sales, Inc. v. Perry,* 834 S.W.2d 491, 493–94 (Tex.Ct. App.1992). Other jurisdictions, the majority, adhering to the rule of strict construction, have held that absent a specific provision for testamentary transfers, restrictions on the transfer of stock do not apply to testamentary transfers. Bockrath, *supra,* § 3, at 1093–94.

In implicitly rejecting the rule of strict construction, the *Boston Safe Deposit* court held that "[t]he language of the restriction is sufficiently broad to apply to all transfers of stock...." *Boston Safe Deposit,* 111 N.E.2d at 449. The court based its holding, in part, on the proposition that "[the executors] have no greater rights in the stock than did the testatrix and they hold the shares subject to the same restrictions on transfer which were in effect at the time of her death." *Id.* Because the decedent could not transfer the stocks without reference to the restriction within her lifetime, the court reasoned, her executor should not be able to do so either. *Id.* Massachusetts courts have also relied upon a " 'modern liberal attitude,' " prevalent in Massachusetts, in arriving at the conclusion that a voting trust certificate was analogous to the stock transfer restrictions considered in *Boston Safe Deposit* and that trans-

fer restrictions contained therein applied to testamentary transfers without specifically mentioning testamentary transfers. *Colbert,* 217 N.E.2d at 920–21 (*quoting* 2 O'Neal, *Close Corporations* § 7.06 at 9, n. 18 (1958)).

A Texas court has relied upon Texas corporation law and legislative history to find that general transfer language in stock transfer restrictions applies to testamentary transfers. *Dixie Pipe Sales,* 834 S.W.2d at 493–94. The court noted that the Texas Business Corporation Act had previously explicitly provided that reasonable stock transfer restrictions were binding upon any " 'executor, administrator, trustee, guardian, or other fiduciary entrusted with like responsibility for the person or estate of the holder.' " *Dixie Pipe Sales,* 834 S.W.2d at 493–94 (*quoting* Tex.Bus.Corp. Act Ann. art. 2.22(C) (West 1955)). Although the Act had been amended to remove the reference to representatives of estates, the court relied upon the fact that when the Act was amended, the explicit, written legislative history was to the effect that other language referring to transfers in general was broad enough to encompass testamentary transfers. *Id.* at 494. We have no such explicit direction from our legislature.

New Mexico's recognition of the policy of strictly construing stock transfer provisions is in contrast with Massachusetts and is more in line with the majority of other jurisdictions that have considered the issue as applied to testamentary dispositions. Other jurisdictions that have considered the issue have held that restrictions on the transfer of stock do not apply to testamentary dispositions unless explicitly expressed, although their reasons for that holding have been varied.

Some jurisdictions have held that restrictions on the transfer of stock which do not expressly provide that they survive the holder's death terminate upon the death of the holder. *Vogel v. Melish,* 31 Ill.2d 620, 203 N.E.2d 411, 414 (1964); *Storer v. Ripley,* 12 Misc.2d 662, 178 N.Y.S.2d 7, 10–11 (Sup.Ct. 1958). Another precedent holds that, because of the rule of strict construction, "[i]f the law is to frustrate a testator's desire to leave to his beneficiaries his entire interest in a corporation, it seems only reasonable to

require specific language to that effect." *In re Blakeman*, 518 F.Supp. 1095, 1099 (E.D.N.Y.1981) (applying Connecticut law). Still others have held that "[w]ords like 'sell,' 'transfer,' 'assign,' 'convey' or 'otherwise dispose of' describe voluntary *inter vivos* transfers and generally have not been held to restrict testamentary dispositions." *Avrett & Ledbetter Roofing & Heating Co. v. Phillips*, 85 N.C.App. 248, 354 S.E.2d 321, 323 (1987). *See also United States v. Adkins-Phelps, Inc.*, 400 F.2d 737, 741 (8th Cir.1968) (apparently applying Arkansas law); *In re Estate of Martin*, 15 Ariz.App. 569, 490 P.2d 14, 15–16 (1971) (adopting majority rule and citing cases), *pet. for rev. vacated*, 108 Ariz. 536, 502 P.2d 1355 (1972); *Taylor's Adm'r v. Taylor*, 301 S.W.2d 579, 582 (Ky.1957) (word "transfer" looks to a sale and testamentary disposition is not a sale). Finally, central to many jurisdictions' holdings on the subject is the concept that a testamentary disposition is one accomplished automatically, by law, and does not implicate a restriction on transfers of stock absent a specific provision within the restriction for testamentary dispositions. *See Globe Slicing Mach. Co. v. Hasner*, 333 F.2d 413, 415 (2d Cir.1964) (applying New York law), *cert. denied*, 379 U.S. 969, 85 S.Ct. 666, 13 L.Ed.2d 562 (1965); *Stern v. Stern*, 146 F.2d 870 (D.C.Cir.1945); *In re Estate of Riggs*, 36 Colo.App. 302, 540 P.2d 361, 363 (1975); *Elson v. Security State Bank*, 246 Iowa 601, 67 N.W.2d 525, 527–28 (1954); *In re Estate of Spaziani*, 125 Misc.2d 901, 480 N.Y.S.2d 854, 857 (Surr.Ct.1984); *Avrett*, 354 S.E.2d at 324.

■ In New Mexico, the transfer of property under a will is by operation of law. NMSA 1978, § 45–3–101(B) (Repl. Pamp.1993). The stock restriction on Atherton's shares uses the words "sold, pledged, or otherwise transferred by any shareholder" and "shall set forth in detail all terms and conditions of any proposed sale, including the price, or any other disposition that the stockholder proposes to make of his shares." These words point to voluntary transfers by the stockholder, not to involuntary transfers by law. *Avrett*, 354 S.E.2d at 323–24. It is unlikely that the drafters of the stock restriction intended that a shareholder who planned to devise shares to an heir was supposed to make a pre-death offer to the corporation. *See Riggs*, 540 P.2d at 363 (quoting *Stern*). We also find it significant that the stock restriction provides no method for calculating the price that the corporation must pay for devised shares—whether it be free, par value, book value, an arbitrator's award, or some other criterion. The drafters of the stock transfer restriction could have included testamentary dispositions within the list of occurrences which require the stockholder to offer the shares to the corporation and the other shareholders. Such a provision was not included in the stock transfer restriction until after Atherton's death, at which time the amendment was added that did specifically apply to testamentary dispositions. The rule of strict construction, taken together with the lack of any specific language in the original stock transfer restriction that applies the restriction to testamentary disposition, dictates our holding that the original restriction does not prohibit the transfer of Atherton's stock according to Atherton's will. We note that this holding does not give Plaintiff greater rights to transfer the stock than Atherton had in his lifetime. The transfer in this case is by operation of law, not a voluntary transfer which would be subject to the restriction if Atherton would have attempted to transfer the stocks within his lifetime. *Riggs*, 540 P.2d at 363.

■ Nor does the amended restriction apply to prohibit the transfer. Section 45–3–101(B) provides:

Upon the death of a person, his separate property and his share of community property devolves:

(1) to the persons to whom the property is devised by his last will....

Property disposed of by will passes directly to the beneficiary under the will. It does not pass to the administrator and then to the beneficiary. *Conley v. Wikle*, 66 N.M. 366, 368, 348 P.2d 485, 487 (1960). Defendants nevertheless cite *Conley* for the proposition that if a designated beneficiary is not present to care for the stock, then the personal representative takes possession, and thus the amended restriction would apply when the personal representative transfers the stock

to the designated beneficiary. Because the corporation to which Plaintiff wished to transfer the stocks did not exist at the time of Atherton's death, Defendants argue that a two-part transaction, first from Atherton's estate to Plaintiff and then from Plaintiff to the beneficiary, was necessary to effectuate the petitioned-for transfer. Defendants also rely on Section 45–3–101(B)(2), which provides that property devolves upon death to "substitutes" for named devisees in cases involving lapse, renunciation, or certain other like circumstances. We are not persuaded by these arguments.

First, there is nothing in *Conley* indicating that Plaintiff must take title to the property. *See* NMSA 1978, § 45–3–715(A)(1) to –(26) (Repl.Pamp.1993) (listing the powers of a personal representative with respect to estate property without regard to title). Second, there is nothing in Section 45–3–101(B) indicating that property must be transferred to a personal representative before it may be transferred to either a named devisee or substitute. Third, Defendants cite no other authorities for their proposition involving a two-part transfer, and the authorities we have located show that courts will supervise the transfer of decedents' estates to the entities intended by the decedents, whether or not those entities are in existence at the time of decedents' deaths. *See American Diabetes Ass'n v. Diabetes Soc'y,* 31 Ohio App.3d 136, 509 N.E.2d 84, 89 (1986).

Defendants concede that the second transfer restriction does not apply to the first transfer of the stock because Atherton, having died three years before the bylaws were amended, did not consent to the second transfer restriction. *See Lett,* 112 N.M. at 331, 815 P.2d at 627. Hence, the only transfer that will take place pursuant to Atherton's will is the transfer from Atherton to the beneficiary of Atherton's will and, while any subsequent transfers may be subject to the second restriction, that transfer is not.

Because we find that the second transfer restriction does not prohibit the petitioned-for transfer, we need not reach the cross-appeal. Even if the district court's grant of reconsideration of summary judgment and admission of the second transfer restriction was erroneous, it would not change our result here. "On appeal, error will not be corrected if it will not change the result." *In re Estate of Heeter,* 113 N.M. 691, 695, 831 P.2d 990, 994 (Ct.App.), *cert. denied,* 113 N.M. 690, 831 P.2d 989 (1992).

The judgment is affirmed.

IT IS SO ORDERED.

HARTZ and BLACK, JJ., concur.