Lyle COVINGTON, Appellant (Plaintiff),

v.

W.R. GRACE–CONN., INC.,
Appellee (Defendant).

No. 96–325.

Supreme Court of Wyoming.

Jan. 16, 1998.

David A. Drell of Brooks, Henley & Drell P.C., Casper; and J. Conard Metcalf of Williams & Trine, P.C., Boulder, for Appellant.

Kathleen B. Dixon and Michele L. Lorenzen of Murane & Bostwick, LLC, Casper; and Greg Greenlee of Murane & Bostwick, LLC, Cheyenne, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

The appellant appeals from the summary judgment which was granted in favor of the appellee.

We reverse and remand.

## ISSUES

The appellant presents two issues for our analysis:

Did the court below err as a matter of law when it determined, in a product liability case, that the Wyoming real estate Statute of Repose, W.S. 1–3–111, applied to insulation products that were never intended to be improvements to real estate because they were routinely and on a continuing basis removed and replaced as part of routine maintenance operations?

Did the court below err as a matter of law when it determined, in a product liability case, that there were no genuine issues of material fact regarding application of

the Wyoming real estate Statute of Repose, W.S. 1–3–111[,] to insulation products that were · routinely and on a continuing basis removed and replaced?

## FACTS

Lyle Covington worked in various positions for a refinery from 1952 until he retired in 1990. During this time, the equipment in the various units of the· refinery had to be constantly repaired and renovated. The renovation process was called a "turn ·around." A unit of the refinery was turned around as often as every two or three years during which time that particular unit was shut down for a complete overhaul. All the insulation which covered the piping and other processing equipment was· stripped off so that the underlying equipment could be accessed. After the repair, replacement, and renovation had been completed, the insulation was reapplied.

In August of 1994, Covington was diagnosed with having a form of cancer known as mesothelioma.[1] He alleged that, during his employment, he was exposed to asbestos insulation and that his malignant mesothelioma was proximately caused by his exposure to the asbestos. Covington contended that a Zonolite insulation product, which was manufactured by W.R. Grace–Conn., Inc., had been applied to flare stacks, piping, and other processing equipment for insulation and fireproofing purposes.

Covington brought a product liability case against the appellee and various other manufacturers and suppliers of the asbestos insulation products. The appellee filed a motion for a summary judgment, relying on the improvements to real property statute of repose, WYO. STAT. § 1–3–111 (1997). The district court granted the appellee's motion, finding that the Zonolite product had been used in connection with an improvement to real property and that, therefore, the real estate statute of repose barred Covington's claim against the appellee. The appellant appeals to this Court.

1. Covington ultimately died from the mesothe-

## STANDARD OF REVIEW

■ Summary judgment is appropriate when no genuine issue as to any material fact exists and when the prevailing party is entitled to have a judgment as a matter of law. *M & A Construction Corp. v. Akzo Nobel Coatings, Inc.,* 936 P.2d 451, 455–56 (Wyo. 1997); *see also* W.R.C.P. 56(c). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. *Davis v. Wyoming Medical Center, Inc.,* 934 P.2d 1246, 1250 (Wyo.1997). We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. *Kirkwood v. CUNA Mutual Insurance Society,* 937 P.2d 206, 208 (Wyo.1997). We do not accord any deference to the district court's decisions on issues of law. *Kanzler v. Renner,* 937 P.2d 1337, 1341 (Wyo. 1997).

## DISCUSSION

■ The appellant asserts that the insulation materials which were used at the refinery, including the Zonolite product, were not used to improve real property and that, therefore, the statute of repose did not bar the claim against the appellee. The appellee counters that it was exempted from the appellant's claim under § 1–3–111 because it manufactured and/or furnished materials which were incorporated into an improvement.

■ The relevant statute of repose provides in pertinent part:

(a) Unless the parties to the contract agree otherwise, no action to recover damages, whether in tort, contract, indemnity or otherwise, shall be brought more than ten (10) years after substantial completion of an improvement to real property, against any person constructing, altering or repairing the improvement, manufacturing or furnishing materials incorporated in the improvement, or performing or furnishing services in the design, planning,

lioma.

surveying, supervision, observation or management of construction, or administration of construction contracts for:

(i) Any deficiency in the design, planning, supervision, construction, surveying, manufacturing or supplying of materials or observation or management of construction;

(ii) Injury to any property arising out of any deficiency listed in paragraph (i) of this subsection; or

(iii) Injury to the person or wrongful death arising out of any deficiency listed in paragraph (i) of this subsection.

(b) Notwithstanding the provisions of subsection (a) of this section, if an injury to property or person or an injury causing wrongful death occurs during the ninth year after substantial completion of the improvement to real property, an action to recover damages for the injury or wrongful death may be brought within one (1) year after the date on which the injury occurs.

Section 1–3–111. Whether a product constitutes an improvement to real property is a question of law. *St. Louis v. Rockwell Graphic Systems, Inc.*, 153 Ill.2d 1, 178 Ill. Dec. 761, 762, 605 N.E.2d 555, 556 (1992). "Its resolution, however, is grounded in fact." *Id.* Although neither this Court nor the legislature has specifically defined the phrase "improvement to real property," the legislature defined the term "improvement" in the statutes which pertain to liens:

(iii) "Improve or improvement" means:

(A) Demolition, erection, alteration or repair of any property for its permanent benefit;

(B) Any work performed or material furnished for the permanent change of any real property; and

(C) Materials manufactured pursuant to contract.

Wyo. Stat. § 29–1–201(a)(iii) (1997). BLACK'S LAW DICTIONARY defines "improvement" in relevant part as follows:

**Improvement.** A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally has reference to buildings, but may also include any permanent structure or other development, such as a street, sidewalks, sewers, utilities, etc. An expenditure to extend the useful life of an asset or to improve its performance over that of the original asset. Such expenditures are capitalized as part of the asset's cost. *Contrast* with Maintenance *and* Repair. *See also* Betterment; Internal improvements; Leasehold improvements.

BLACK'S LAW DICTIONARY 757 (6th ed.1990). BLACK'S LAW DICTIONARY defines the term "maintenance" in pertinent part as follows:

**Maintenance.** The upkeep or preservation of condition of property, including cost of ordinary repairs necessary and proper from time to time for that purpose.

. . . .

*Assets.* Expenditures undertaken to preserve an asset's service potential for its originally-intended life; these expenditures are treated as periodic expenses or product costs. Contrast with Improvement. *See also* Maintain; Repair.

*Id.* at 953–54 (citation omitted). We have said the following with regard to whether "maintaining" property falls within the statute of repose:

In 1981, when the statute of repose was amended, the legislature included the following language:

"(a) The purpose of this law is to recognize that:

. . .

"(ii) It is in the public interest to set a period of time following the substantial completion of the project after which *no action may be brought for errors and omissions in the design, planning, supervision, construction, surveying, manufacturing or supplying of materials or observations or management of improvements to real estate,* whether or not these errors and omissions have resulted or may result in injury[.]"

1981 Wyo. Sess. Laws ch. 166 § 2 (emphasis added). The emphasized language demonstrates that the legislature intended

that the statute of repose apply as a bar to actions alleging "errors and omissions" occurring during the process of completing the improvement *and not to actions which allege "errors and omissions" which occur in the maintenance of the improvement after it is completed.*

*Goodrich v. Seamands,* 870 P.2d 1061, 1063–64 (Wyo.1994) (some emphasis added).

Before the summary judgment was granted in this case, depositions were taken of Covington and two men who worked with Covington at the refinery. The testimony, however, did not focus on whether the application of the Zonolite product met the requirements to place it within the definition of an "improvement to real property." The testimony did, nevertheless, demonstrate that, depending on which witnesses are believed, a jury could conclude either that the Zonolite product was used as an improvement to real property or that it was used in a way which did not constitute an improvement.

During his testimony, Covington described the turn-around process. He explained that, during a turn around, all the insulation had to be removed from the equipment so that the engineers could get to the equipment to inspect it.

One of Covington's co-workers, who had worked at the refinery from 1946 through 1981, testified that he remembered using a product called Zonolite. He said that the Zonolite product was only used for fireproofing two flare stacks and that it was an essential component of the flare stacks. He indicated that the Zonolite product was mixed with other products in a cement mixer and applied as mud to the forms built around the metal stacks. He also said that he had never removed the Zonolite product from the stacks and that they intended for the Zonolite product to permanently stay on the stacks.

The second co-worker, who had worked at the refinery from 1947 through 1983, remembered using the Zonolite product a little differently. He indicated that they only used the Zonolite product for exceptionally hot lines and that the Zonolite product was not one of their regular insulations. He estimated that the Zonolite product was used approximately a half a dozen or a dozen times at the refinery.

Given the insufficient factual record regarding the use and permanency of the Zonolite product, a question of fact exists as to whether the Zonolite product constituted an "improvement to real property" which would afford the appellee the protection of the statute of repose. We must, therefore, reverse and remand for a determination of whether the Zonolite product was an improvement to real property or whether it was merely a product used in maintaining the equipment. If a jury decides that the Zonolite product was not an improvement, the protection of the statute will not exist, and the jury will have to resolve the issue of causation.

Reversed and remanded.