**In the Matter of the ESTATE OF Frank P. CROONBERG, deceased:**

**Belinda J. Croonberg and Croonberg Ranch, Inc., Appellants (Petitioners),**

v.

**Estate of Frank P. Croonberg; and the Beneficiaries, Laramie Senior Center and the Harmony Foundation, Appellees (Respondents).**

No. 98–266.

Supreme Court of Wyoming.

Sept. 27, 1999.

Representing Appellants: Jerry A. Yaap of Bishop, Bishop & Yaap, Casper, Wyoming.

Representing Appellees: Ronald D. Copenhaver, Laramie, Wyoming; and Donald P. Prehoda, Jr. and Laurie Edwards Janack of Prehoda, Leonard and Janack, LLC, Laramie, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

MACY, Justice.

Appellants Belinda Croonberg and Croonberg Ranch, Inc. appeal from the district court's summary judgment orders which found generally in favor of Appellees Estate of Frank P. Croonberg, Laramie Senior Center, and The Harmony Foundation.

We reverse and remand.

### ISSUES

The appellants present the following issues for our review:

Did the trial court err in finding that there were no genuine issues of material fact, as a matter of law, and that a summary judgment was proper in favor of appellees concerning:

I. Whether the 1995 amendment to the corporate bylaws relative to amending the restriction on transfer of stock does not affect and is not binding on the shareholders with respect to the shares of stock issued before the amendment.

II. Whether the court construed the bylaws so as to give effect to the intention of the parties.

III. Whether the personal representative is bound by the bylaws, Article VIII Section 2(b)(1), to offer the decedent's shares to the corporation which has the exclusive right and option to purchase the decedent's shares within 30 days after the date of the offer.

IV. Whether the board of directors determined the value of the corporate shares at the directors['] meeting on October 3, 1995, in accordance with the amended bylaws.

### FACTS

Croonberg Ranch, Inc. was incorporated as a Wyoming corporation in 1973. During all times relevant hereto, the only shareholders of the corporation were Frank Croonberg, Jean Croonberg, and Belinda Croonberg. Frank and Jean were married from 1955 until 1988, and Belinda was one of their children. The corporation's original bylaws contained share transfer restrictions. Article VIII, Section 2b of the original bylaws provided in pertinent part:

b. Restrictions on Right of Transfer. (1) No shareholder, while living, shall transfer ... any share of the Corporation unless such share shall have first been offered in writing for sale to the Corporation. The Corporation reserves and shall have the exclusive right and option to purchase within thirty days after the date of the offer such shares at the value per share determined annually by the Directors.... If the shares of the shareholder desiring to make disposition thereof are not so purchased by the Corporation as aforesaid, then the shares not so purchased shall be offered in writing for sale to and shall be subject to an option on the part of each of the remaining shareholders to purchase a proportionate share at the price herein provided, which said option shall be exercised, if at all, within thirty days from the date of such offer to them. After the expiration of the terms herein provided, the shareholder, if the Corporation and the remaining shareholders shall not have exercised their options to purchase such shares, shall be free to transfer ... such share[s] without any restrictions whatsoever.

(2) Upon the death of a shareholder, ... all of the shares held by him ... shall be sold to the company at the price determined and in the manner set forth in b(1) of this section....

Article XIII of the original bylaws allowed the board of directors to alter, amend, or repeal existing bylaws and to adopt new bylaws.

The shareholders held a meeting on October 3, 1995. All three shareholders were present and were elected as directors during the meeting. Immediately following the shareholders' meeting, a meeting of the board of directors was convened. One of the items considered during the directors' meeting was a proposal to amend the transfer restrictions contained in the bylaws. The proposed amendment set forth a new method for valuing the shares and explicitly gave the

surviving shareholders an option to purchase a deceased shareholder's shares.

The minutes of the directors' meeting reveal that the directors unanimously approved the proposed amendment. The amendment provided in relevant part:

## ARTICLE VIII, SECTION 2, SUBSECTION B RESTRICTIONS ON RIGHT OF TRANSFER

1. No shareholder shall have the right to sell, assign, pledge, encumber, transfer, or otherwise dispose of any of the shares of the corporation without first offering the shares for sale to the corporation. The purchase price for each share of stock shall be the fair market value of each such share as shown on the balance sheet of the corporation as of the end of the fiscal year last preceding the event causing said option to be exercisable, prepared and certified by the firm of CPA Consulting Group ... adjusted, however, for operations of the corporation from the end of the last preceding fiscal year to the date of the event which gave rise to the particular option then involved.

2. [Provision outlining how share price was to be determined].

3. If the corporation fails or refuses within a period of 90 days to make reasonable arrangements for the purchase of the shares, then the existing shareholders shall have the right to purchase such shares for the same price for which the corporation could purchase such shares.

4. In the event the shareholders fail or refuse within a period of 90 days after the corporation has failed or refused to purchase such shares, to make reasonable arrangements for the purchase of the shares, the offering shareholder may obtain from a third party a bona fide ... offer to sell such shares and either the corporation or the existing shareholders shall then have the option of purchasing such shares upon the same terms and conditions and for the same price as that offered by a third party. ...

5. On the death of any shareholder, the corporation shall have the right to purchase all shares owned by the shareholder immediately prior to his or her death on the same terms set forth above, and this provision shall be binding on the personal representatives of each shareholder. Upon the death of any shareholder, then the corporation, or the surviving shareholders shall have the right to purchase such shares.... The purchase price shall be paid to the personal representative.... In the event neither the corporation nor the living shareholders desire to purchase such shares from the estate of a deceased shareholder, within 120 days from the death of a deceased shareholder, then such shares of the deceased shareholder may be sold to a third party and within 30 days from the date the corporation and the existing shareholders have been informed in writing as to the terms, conditions and price to be paid by the third party, the corporation or the living shareholders shall have said 30 day period upon receiving the bona fide offer from a third party to purchase a deceased shareholder[']s shares upon the same terms, conditions and purchase price as that offered by a third party. In the event either the corporation or shareholders fail or refuse within said 30 day period to purchase such shares upon the same terms, conditions and purchase price as that offered by a third party, then such shares may be sold to such third party.

The corporation did not issue any new shares after the 1995 amendment to the bylaws.

Frank died on December 28, 1996. Shortly thereafter, his will was admitted to probate, and one of Frank's friends, Clynn Phillips, was appointed as the personal representative of the estate. Frank devised one dollar to Belinda and the remainder of his estate to the Laramie Senior Center and The Harmony Foundation (the beneficiaries).

Croonberg Ranch, Inc.'s board of directors held a special meeting on March 10, 1997, and decided that the corporation would not purchase Frank's shares. Belinda then petitioned the district court to allow her to purchase Frank's shares for $73,479.10, which was the value of the shares as calculated by

the corporation's accountant pursuant to the terms of the 1995 amendment. Jean consented to Belinda's purchase of Frank's shares. The personal representative and the beneficiaries of Frank's estate objected to Belinda's petition. They claimed that Belinda's proposed purchase price did not represent the fair market value of the shares; that the 1995 amendment to the bylaws was not effective; and that, even if the amendment was effective, it did not apply to Frank's shares because they were issued prior to the amendment and the shareholders did not approve the amendment.

Both sides filed motions for summary judgment. The district court held a hearing and subsequently granted in part and denied in part each motion for summary judgment. The district court determined that the 1995 amendment to the bylaws was effective but that it did not apply to Frank's shares. It concluded that the transfer restrictions in the 1973 bylaws applied to Frank's shares and that a genuine issue of material fact existed as to the value of the shares.

The appellees subsequently filed a motion in which they sought dismissal of Belinda's petition to purchase the shares or, in the alternative, a summary judgment. They argued that, under the 1973 bylaws, the surviving shareholders did not have the right to purchase a deceased shareholder's shares. The appellees maintained that only the corporation had the right to purchase the shares and that the corporation waived its purchase option when it declined at the March 10, 1997, board meeting to purchase the shares. The appellants also filed a motion for a summary judgment, contending that the 1973 bylaws did allow the surviving shareholders to purchase a deceased shareholder's shares. They also maintained that the corporation did not knowingly waive its right to purchase the shares. The district court granted the appellees' summary judgment motion, dismissed Belinda's petition to purchase Frank's shares, and ordered the estate to distribute the shares to the beneficiaries. The appellants appealed to the Wyoming Supreme Court.

## DISCUSSION

The appellants maintain that the district court erred when it determined that the 1995 amendment to the bylaws did not apply to Frank's shares and granted a summary judgment in favor of the appellees. The appellees contend that the district court's decision was correct because the shareholders did not vote on the transfer restriction contained in the 1995 amendment and they did not enter into an effective shareholders' agreement. We agree with the appellants.

■ A summary judgment is appropriate when no genuine issue exists as to any material fact and the moving party is entitled to be awarded a judgment as a matter of law. *Marchant v. Cook*, 967 P.2d 551, 553 (Wyo. 1998); *Covington v. W.R. Grace–Conn., Inc.*, 952 P.2d 1105, 1106 (Wyo.1998). The Wyoming Supreme Court evaluates the propriety of a summary judgment by employing the same standards and by using the same materials as the district court employed and used. *Covington*, 952 P.2d at 1106. We examine the record in the light most favorable to the party who opposed the motion for a summary judgment, and we give that party the benefit of all the favorable inferences that may be fairly drawn from the record. *Marchant*, 967 P.2d at 554. We do not accord deference to the district court's decisions on issues of law. *Ahearn v. Tri–County Federal Savings Bank*, 948 P.2d 896, 897 (Wyo.1997).

Wyo. Stat. Ann. § 17–16–1020(a) (LEXIS 1999) states in pertinent part:

(a) A corporation's board of directors may amend or repeal the corporation's bylaws unless:

(i) The articles of incorporation or this act reserve this power exclusively to the shareholders in whole or part . . .

Croonberg Ranch, Inc.'s corporate documents authorized the board of directors to amend the bylaws. The district court acknowledged that the board of directors had the authority to amend the bylaws but determined that the 1995 amendment did not apply to the shares which were issued prior to its adoption. The district court relied on Wyo. Stat. Ann. § 17–16–627(a) (LEXIS

1999) in reaching its decision. That statute provides:

(a) The articles of incorporation, bylaws, an agreement among shareholders, or an agreement between shareholders and the corporation may impose restrictions on the transfer or registration of transfer of shares of the corporation. *A restriction does not affect shares issued before the restriction was adopted unless the holders of the shares are parties to the restriction agreement or voted in favor of the restriction.*

Section 17–16–627(a) (emphasis added).

The district court stated that the shareholders did not enter into a shareholders' agreement when they, as directors, voted for the amendment to the bylaws. It also stated that the shareholders did not vote in favor of the amendment because "a vote as a director, in a separate meeting for directors, does not render such vote into a shareholder's vote merely because a director is also a shareholder." The district court concluded, therefore, that, because Frank's shares were issued before the 1995 amendment was adopted and the shareholders did not expressly approve the restriction, it did not apply to Frank's shares.

■ Our well established rules of statutory construction require us to give effect to the legislature's intent as expressed in the plain and unambiguous language of the statute. *Lyles v. State ex rel. Division of Workers' Compensation*, 957 P.2d 843, 846 (Wyo. 1998); *State Department of Revenue and Taxation v. Pacificorp*, 872 P.2d 1163, 1166 (Wyo.1994). The plain language of § 17–16–627(a) requires only that the shareholders either participate in a shareholders' agreement approving the restriction or vote in favor of the restriction in order for the restriction to apply retroactively to shares issued before it was adopted. The statutory language does not require that the vote be taken at a separate shareholders' meeting.

■ The purpose of § 17–16–627(a) is to protect shareholders from having their shares of stock devalued by restrictions that are adopted without their consent after their shares were issued. *See Di Loreto v. Tiber*

*Holding Corporation*, 1999 WL 316900, at *6 (Del.Ch. May 12, 1999) (interpreting a Delaware statute that is similar to § 17–16–627(a)). Although this Court has not ruled on what kind of shareholder approval is necessary in order to apply a transfer restriction retroactively, courts from other jurisdictions have suggested that shareholders may consent in various ways to a transfer restriction. The New Mexico Supreme Court indicated that, in order to make a restriction applicable to shares issued prior to its adoption, the shareholders must be given an opportunity to participate in the decision to adopt the restriction or they must consent to the restriction. *Lett v. Westland Development Co., Inc.*, 112 N.M. 327, 815 P.2d 623, 626 (1991); *see also Kerr v. Porvenir Corporation*, 119 N.M. 262, 889 P.2d 870, 875 (Ct.App.1994), *cert. denied*, 119 N.M. 168, 889 P.2d 203 (1995). Similarly, the United States District Court for the District of Delaware stated that a corporation could obtain its shareholders' consent for a transfer restriction by having them vote on the restriction or by negotiating agreements with individual shareholders. *Joseph E. Seagram & Sons, Inc. v. Conoco, Inc.*, 519 F.Supp. 506, 514 n. 5 (D.Del.1981).

■ In this case, Croonberg Ranch, Inc. had only three shareholders, and they were all elected as directors at the October 3, 1995, shareholders' meeting. The shareholders/directors wanted the shares to remain in the Croonberg family. The 1995 amendment to the bylaws was aimed at accomplishing that goal by giving the surviving shareholders and the corporation options to purchase a deceased shareholder's shares at a reasonable price. The corporation's accountant, Tom Creager, informed all the shareholders/directors at the directors' meeting that the new method of valuation contained in the amendment could result in a diminished share value. All three shareholders/directors had the opportunity to, and actually did, participate in the decision to adopt the amendment. We conclude, therefore, that, when the directors/shareholders voted in favor of the amendment, they consented, in accordance with § 17–16–627(a), to having

the transfer restriction apply to all the corporation's shares.

 The district court also implied that a disputed issue of fact existed as to whether or not Frank actually voted in favor of the restriction. We do not agree. Six persons attended the October 3, 1995, meetings: Belinda; Jean; Frank; Phillips; Creager; and the corporation's attorney, Marvin Bishop III. Belinda, Jean, Creager, and Bishop averred that Frank voted in favor of the amendment. Phillips testified during his deposition that he did not think Frank voted in favor of the amendment, but he conceded that he was not looking at Frank when the vote was taken.[1] Phillips' equivocal statement did not create a genuine issue of material fact. We conclude that, on the record before us, it is clear that Frank voted in favor of the amendment and that he, therefore, consented to have the transfer restriction apply to his shares.

We do not need to address the remainder of the appellants' issues because we have determined that the 1995 amendment to the bylaws applied to Frank's shares.

Reversed and remanded for further proceedings consistent with this decision.

---

1. It is interesting to note that Frank had given Phillips a proxy to vote his shares at the October 3, 1995, shareholders'. meeting. Apparently, Phillips voted, in some instances, in Frank's place at the directors' meeting. Phillips testified that he voted Frank's proxy in favor of the amendment, although the minutes of the directors' meeting do not state that he voted on that issue. We make no decision here concerning the general validity of a proxy vote at a directors' meeting. As to Phillips' vote concerning the amendment, we note that, as a general rule, a proxy is revoked when the shareholder attends the meeting and votes. 18A Am.Jur.2d *Corporations* § 1094 (1985). Consequently, when Frank voted on the amendment to the bylaws, he effectively revoked Phillips' authority, if any, to vote as his proxy.